**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**ROBERT JAMES**                                                                 **PETITIONER**
**ADC# 145736**

**VS.**                        **CASE NO.: 5:13CV00379 BSM/BD**

**RAY HOBBS, Director,**
**Arkansas Department of Correction**                          **RESPONDENT**

**RECOMMENDED DISPOSITION**

**I**.        **Procedure for Filing Objections**

The following Recommended Disposition ("Recommendation") has been sent to

United States District Chief Judge Brian S. Miller.  Any party may file written objections

to this Recommendation.

Objections must be specific and must include the factual or legal basis for the

objection.  An objection to a factual finding must identify the finding believed to be

incorrect and must describe the evidence that supports that belief.

An original and one copy of objections must be received in the office of the United

States District Court Clerk within fourteen (14) days of this Recommendation.  A copy

will be furnished to the opposing party.

If no objections are filed, Chief Judge Miller can adopt this Recommendation

without independently reviewing all of the evidence in the record.  By not objecting, you

may also waive any right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.  Introduction

Petitioner Robert James filed a pro se petition for a writ of habeas corpus raising claims of ineffective assistance of counsel.  (Docket entry #1)  Director Hobbs has responded to the petition arguing that Mr. James procedurally defaulted five of his six claims in the petition by failing to properly raise them in State court.  (#5)  Respondent Hobbs has acknowledged, however, that under the recent Supreme Court cases of *Martinez v. Ryan*, 566 U.S. ___ 132 S.Ct. 1309 (2012) and *Trevino v. Thayler*, 569 U.S. __, 133 S.Ct. 1911, (2013), as well as the Eighth Circuit case of *Sasser v. Hobbs*, 735 F.3d 833 (8th Cir. 2013), Mr. James may be able to argue he had cause for his procedural default because he did not have counsel to assist in raising his claims in State court.  (#5) Respondent Hobbs contends, however, that even if Mr. James could show cause, he has not shown prejudice as required to overcome a procedural default bar.  (#5, #18)

The Court gave Mr. James an opportunity to provide a summary of evidence that would establish prejudice.  (#10)  Mr. James responded but has failed to provide an arguable basis for a finding of prejudice.  (#16)  Accordingly, the Court recommends that Judge Miller DISMISS Mr. James's petition for writ of habeas corpus, with prejudice.

III.   **Background**

A Logan County, Arkansas jury found Mr. James guilty of first-degree murder and

sentenced him to life imprisonment.  *James v. State*, 2010 Ark. 486, at 1.  On direct

appeal, Mr. James's attorney filed a motion to withdraw and a no-merit brief.  *Id*.  Mr.

James submitted pro se points for reversal.  *Id*.  The Arkansas Supreme Court

summarized the evidence presented at trial as follows:

> The evidence presented at trial showed that appellant had separated from his wife, Heather, and that Heather was having an affair with Tony Rice. Heather testified that she had told appellant about the affair, and it was clear that appellant had been aware of the affair for more than a month before shooting Rice. In the months prior to the attack, appellant had contacted two women who had been married to Rice a number of times, asking questions about Rice and indicating that he thought the affair had been ongoing for several months. Appellant had also spoken to Rice, asking his intentions towards Heather's son.
>
> On August 8, 2008, appellant told his son that he was going to get bread and went to the Wal–Mart store where Heather and the victim worked together. The State introduced as evidence video from a security camera that showed appellant arriving at the Wal–Mart parking lot, appellant waiting in the car for some minutes, and Heather and Rice crossing the lot to their trucks after their shift ended. As Heather testified, she and Rice opened the doors to their trucks to let the heat out and stood talking for a brief while. The video documented that appellant then drove his truck from a parking space some distance away to the employee section of the lot and blocked Rice's truck in. Heather testified that appellant got out and began firing. Heather and another witness described how appellant continued firing as he chased Rice when he fled and fired the gun a final time standing over Rice after Rice fell to the ground.
>
> Appellant then emptied the spent shells from his gun and left the parking lot. He drove home, told his son that he had shot Tony, and waited on the porch for the police to arrive. The police found the murder weapon in the house and a note from appellant to Heather. The note expressed sorrow that "it ended this way" and thanked her for the time with her son.  Four law enforcement officers testified that appellant had made statements to them

admitting that he had shot Rice. The medical examiner testified that Rice
had some other minor wounds and had died from two gunshot wounds to
his face.

*Id*. at 2-3.  The Arkansas Supreme Court found no error in the trial court's rulings,

granted counsel's motion to withdraw, and affirmed Mr. James's conviction.  *Id*. at 2-14.

Mr. James filed a pro se petition with the trial court under Arkansas Rule of

Criminal Procedure 37 claiming his trial counsel was ineffective for failing: (1) to

investigate mitigating evidence; (2) to call mitigating witnesses during the penalty phase

of the trial; (3) to ask for a change of venue; (4) to call an expert witness to contradict the

state's expert; (5) to investigate the clarity of the Wal-Mart video; and (6) to investigate

how all the witnesses stated as many as seven to eight shots were fired from a five-shot

revolver.  In the petition, Mr. James also claimed he was denied counsel during an in-

custody interrogation.  (#5-5 at pp. 7-12; #5-6 at pp. 45-51)

The trial court did not hold a hearing on Mr. James's Rule 37 petition because it

found a hearing was "unnecessary due to the fact that review of the court dockets, court

files and trial transcript conclusively show that the petition is meritless."  (#5-6 at p. 54)

In its order rejecting the petition, the trial court addressed Mr. James's claims.  The court

pointed out that Mr. James admitted that he had committed the murder, so it was

appropriate for the defense strategy to focus on the "crime of passion" and to elicit

sympathy for the defendant on the premise that he was raising another man's child and

was devastated that his wife was having an affair.  (*Id*. at pp. 54-55)

4

The court found that Mr. James's change-of-venue argument was conclusory and unsupported by facts or law. (*Id.* at p. 55)  The court further found that Mr. James had neither stated any facts that would justify use of a defense expert witness nor established that having an expert witness would have resulted in a different outcome at trial. (*Id.*)  The court found that Mr. James's complaints about the quality of the surveillance video and the witnesses' testimony about the gun shots were directed toward the sufficiency of the evidence and were mere conclusions without supporting facts. (*Id.* at p. 56)  The trial court found no merit in Mr. James's allegation that his rights were violated during his in-custody interrogation.  Finally, the trial court held that Mr. James had not established prejudice in order to meet the *Strickland* standard, and the verdict was supported by substantial evidence. (*Id.* at p. 57)

On appeal of the denial of his Rule 37 petition to the Arkansas Supreme Court, Mr. James claimed that his trial counsel was ineffective for failing: (1) to provide mitigating evidence during the penalty phase of the trial; (2) to petition the trial court for a change of venue; (3) to object to the jury being selected from only one section of the county; (4) to challenge the validity of the surveillance camera; (5) to diligently attack the selection of two prejudiced jurors; (6) to attack the time frame of the "letter to Heather" causing prejudice; (7) to investigate witness account of the number of shots fired and object to arguments raised during closing; and (8) to raise the issue of the right to counsel during

in-custody interrogation as well as the mental lapse of reasoning which should have resulted in conviction on the lesser-included offense.  (#5-6 at pp. 12-13)

The Arkansas Supreme Court held that only two of Mr. James's ineffective-assistance-of-counsel claims were properly before the court because they had been raised with the trial court. *James v. State*, 2013 Ark. 290, at 2.  On Mr. James's claim that trial counsel should have investigated and presented mitigating evidence in the penalty phase of the trial, the Court held that Mr. James's allegation was conclusory and failed to name witness whose testimony would have benefitted the defense but were not called at trial. *Id*. at 4.  And the Court addressed whether Mr. James's trial counsel was ineffective for failing to request a change of venue. *Id*. at 4-5.  It held that Mr. James had not provided facts to support his claim of prejudice arising from his counsel's failure to file a motion to change the venue and affirmed the trial court's ruling denying the claim.  *Id*. at 5.

In this petition, Mr. James claims his trial counsel was ineffective for failing: (1) to develop an affirmative defense of justification, properly inform the prosecution about the defense prior to trial, and object to the State's motion in limine regarding certain evidence of the affair the deceased had with Mr. James's wife (#1 at pp. 8-20);(2) to request a change of venue (*Id*. at pp. 20-25); (3) to object to the jury being selected from only one section of the county (*Id*. at pp. 25-27); (4) to challenge the validity of the surveillance camera (*Id*. at pp. 27-36); (5) to "diligently attack" the selection of two prejudiced jurors

(*Id*. at pp. 36-41); and (6) to pursue a defense of "extreme emotional distress or inflamed heat of passion" and "have petitioner evaluated for emotional defects." (*Id*. at pp. 42-45)

## IV.   Discussion

### A.   Standard of Review

Federal court can grant a writ of habeas corpus to a state prisoner only if a state court decision was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Garrison v. Burt*, 637 F.3d 849, 853 (8th Cir. 2011) (quoting 28 U.S.C. § 2254(d)). Relief will be granted only if the state court decision is both incorrect and unreasonable. *Id*. (quoting *Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir. 2010)). The Court must presume the state court's factual findings are correct, and it is Mr. James's burden to rebut this presumption by clear and convincing evidence. *Id*. (citations omitted).

### B.   Procedural Default

Mr. Hobbs responds that all but one of the claims Mr. James raises in his petition are procedurally defaulted. (#5 at p. 3) He asserts that Mr. James has defaulted claims 1, 3, 4, and 5 because these claims were not presented to the trial court in the Rule 37 petition. Further, Mr. Hobbs's argues, claim 6 was raised in Mr. James's Rule 37 petition (#5-5 at p. 10), but because Mr. James did not pursue it in his appeal to the Arkansas Supreme Court, that claim is also procedurally defaulted. (#5-6 at pp. 25-26)

Federal courts cannot grant habeas relief on procedurally defaulted claims if the last state court rendering a judgment in a case clearly and expressly stated that its judgment rested on a state law procedural ground. *Oglesby v. Bowersox*, 592 F.3d 922, 924 (8th Cir. 2010) (citations omitted); see also *Crawford v. Minnesota*, 498 F.3d 851, 854 (8th Cir. 2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 730, 111 S.Ct. 2546 (1991)). Federal courts do not sit to correct a state court's application of its ordinarily adequate procedural rules except in unusual circumstances. See *Lee v. Kemna*, 534 U.S. 362, 376, 122 S.Ct. 877 (2002).

Mr. James did not raise claims 1, 3, 4, or 5 in his Rule 37 petition (#5-5) and his time for doing so under Arkansas law has passed. See ARK. R. CR. P. 37.2. Mr. James raised claim 6 in his Rule 37 petition but procedurally defaulted the claim when he did not pursue it in the appeal of the trial court's denial of Rule 37. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728 (1999) (to meet the requirements of 28 U.S.C. § 2254(c), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). Accordingly, Mr. James has procedurally defaulted claims 1, 3, 4, 5, and 6.

C.      Cause to Excuse Procedural Default

The doctrine barring procedurally defaulted claims is not without exception. *Martinez v. Ryan*, 566 U.S. ___, ___, 132 S. Ct. 1309, 1315 (2012). A prisoner may

obtain review of a defaulted claim by showing cause for the default and prejudice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In *Coleman*, the Supreme Court held

that, as a general rule, "negligence on the part of a prisoner's postconviction attorney does

not qualify as 'cause'" to excuse procedural default.  *Martinez*, 132 S.Ct. at 1316 (quoting

*Maples v. Thomas*, 565 U.S. ___, 132 S.Ct. 912, 922 (2012).  In *Martinez*, however, the

United States Supreme Court created a "narrow exception" to the general rule set out in

*Coleman*.  The *Martinez* Court held that "inadequate assistance of counsel at

initial-review collateral proceedings may establish cause for a prisoner's procedural

default of a claim of ineffective assistance at trial."  *Martinez*, 132 S. Ct. at 1315.  The

Court made clear, however, that in order for the exception to apply so as to overcome the

default, the prisoner must demonstrate that "the underlying ineffective-assistance-of-trial-

counsel claim is a substantial one, which is to say that the prisoner must demonstrate that

the claim has some merit."  *Id*.

After *Martinez*, in *Trevino v. Thaler*, 569 U.S. ___, 133 S.Ct. 1911, (2013), the

Supreme Court expanded the *Coleman* exception to include claims of prisoners in any

state that, in theory, grants permission to bring an ineffective-assistance-of-counsel claim

on direct appeal, but, "makes it highly unlikely in a typical case that the defendant will

have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on

direct appeal."  *Id*. at 1921.

In *Sasser v. Hobbs*, 735 F.3d, 833, 853 (2013), the Eighth Circuit found that, under *Trevino*, Arkansas's post-conviction appeal process does not, "as a systematic matter," afford indigent defendants a "meaningful review of a claim of ineffective assistance of trial counsel" on direct appeal.  *Id*. (quoting *Trevino*, 133 S.Ct. at 1919).  Accordingly, under *Martinez*, *Trevino*, and *Sasser,* Mr. James may establish cause to excuse default of his ineffective-assistance-of-counsel claims because he lacked appointed counsel during the initial-review collateral process.  To utilize this exception to overcome his procedural default, however, Mr. James must first demonstrate that his defaulted ineffective-assistance-of-trial-counsel claims have "some merit."  *Martinez*, at 1318; see also *Holt v. Hobbs*, 5:12CV00453 BSM, 2013 WL 3481871 (E.D. Ark. July 10, 2013).

D.      Ineffective Assistance of Counsel

A criminal defendant's Sixth Amendment right to effective assistance of counsel "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense."  *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 4 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

In order to prevail on his habeas corpus claim based on ineffective assistance of counsel, Mr. James must show:  (1) that trial counsel's performance was so deficient that it fell below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney; and (2) that there is a reasonable probability that the

outcome of the trial would have been different but for the substandard performance of trial counsel.  See *Strickland*, 466 U.S. at 687–94.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial.  *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527 (2003) (quoting *Strickland*, 466 U.S. at 694).  The Court's scrutiny of counsel's performance is highly deferential, and the Court applies a strong presumption that counsel's conduct falls within the "wide range of reasonable professional judgment."  *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006) (citing *Strickland*, 466 U.S. at 689); see also *Middleton v. Roper*, 455 F.3d 838, 845 (8th Cir. 2006).

"Failure to establish either Strickland prong is fatal to an ineffective-assistance claim."  *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011) (citation omitted).  The Court is not required to address the performance prong if the petitioner cannot affirmatively prove prejudice.  *United States v. Lee*, 715 F.3d 215, 221 (8th Cir. 2013)(citation omitted).

1.     *Claim One - Affirmative Defense/Motion in Limine*

Mr. James first claims that his trial counsel was ineffective for failing to develop an affirmative defense of justification, to properly inform the prosecution about the defense prior to trial, and to object to the State's motion in limine regarding certain evidence of the affair the deceased had with Mr. James's wife. (#1 at pp. 8-20)

Mr. James's trial counsel did not perform below the standard of a reasonable lawyer when he did not develop a justification defense because Arkansas law does not include "inflamed heat or passion" among its justification defenses.  See ARK. CODE ANN. § 5-2-601 *et seq.*  Under Arkansas law, if a person causes the death of another person under circumstances that would otherwise be murder, except that the actor was under an extreme emotional disturbance for which there was a reasonable excuse, then he or she can request that the court instruct the jury about the elements of the lesser crime of manslaughter.  During the pre-trial hearing, the judge explained that justification was "probably not going to be an issue, because to use justification, it states a person is justified in using force or deadly force only if he reasonably believes that the situation necessitates the defensive force employed, which is Arkansas Code Annotated 5-2-606.  I doubt that is going to be an issue based on my review of the felony information." (*Id.* at p. 383)

Here, the judge found there was sufficient proof to instruct the jury on several lesser-included offenses, including manslaughter.  (Respondent's Exhibit A4 at p. 841-46)  Accordingly, Mr. James's counsel acted reasonably when he decided not to pursue a justification defense.  Further, Mr. James cannot show prejudice from his attorney's failure to develop or present a justification defense that was not applicable given the facts of his case.

12

Mr. James complains that his counsel was ineffective for not informing the prosecution about his defense prior to trial.  The prosecution complained at the pre-trial hearing that it did not know what defense counsel planned to raise at trial.  The judge found, however, that counsel had given the prosecution sufficient notice because Mr. James's answer had talked about mental state and used the words "emotional distress and inflamed passion."  (Respondent's Exhibit A3 at pp. 383-84)  The court found this was sufficient notice of defense counsel's intention to argue for the lesser-included-offense instructions at trial, so any delay on the part of his counsel did not prejudice Mr. James at trial.  (*Id*.)

Moreover, Mr. James's counsel succeeded in producing sufficient evidence at trial for the court to instruct the jury on the lesser-included offense of manslaughter.  (Respondent's Exhibit A4 at p. 846)  So, Mr. James's argument, that his counsel's defense strategy was deficient, fails.

The State filed a pre-trial motion in limine to exclude certain evidence of the affair between the victim and Mr. James's wife.  Mr. James's counsel objected to the motion and argued that if the Court granted the motion, the defense would not be able to develop its defense that it is entitled to the lesser included instructions for second-degree murder and manslaughter.  (Respondent's Exhibit A3 at p. 374)

During a hearing on the motion, Mr. James's counsel urged the Court to permit him to "cross-examine at least Heather James, and other people who have made

13

statements [to the police] about the infidelity." (*Id*. at p. 374)  Mr. James's counsel

argued that "marital infidelity can be a trigger for the Manslaughter, and also be a trigger

for the Second Degree Murder.  And I'm arguing . . . that we are going to be entitled to

the second and manslaughter instructions, because there is any evidence that will support

those instructions." (*Id*. at 376)  The judge ruled that Mr. James's counsel would be able

to cross-examination the prosecution's witnesses on any subject raised on direct.  (*Id*. at p.

384)

Mr. James's counsel properly objected to the motion in limine, obtained a ruling

that was favorable to the defense, questioned witnesses at trial about the victim's

relationship with Mr. James's wife, and presented sufficient evidence for the lesser-

included offenses of second-degree murder and manslaughter to go to the jury.  (*Id*. at pp.

649-50, Respondent's Exhibit A4 at pp. 669, 674, 679, 680-81, 683-84, 842-45, 859-878)

The record does not support a conclusion that counsel's performance fell below the

standard of a competent attorney or that counsel's performance in dealing with the motion

in limine in any way affected the outcome of the trial.

Mr. James's claims of ineffective assistance of counsel related to his defense and

the motion in limine do not have merit.

2.    *Claim Three - Jury Panel*

For his third claim, Mr. James complains that his counsel was ineffective for

failing to object to the jury being selected from only one section of the county.  (#1 at pp.

25-27)  Mr. James states that there were sixty-two people on the jury panel.  He asserts that, during voir dire, fifteen members of the panel stated they had some knowledge of, or relationship with, the victim or one of the witnesses; and out of those sixteen members of the panel, only two were excused for cause.  (#1 at pp. 25-26)  Mr. James claims that his lawyer was ineffective because he knew that many of the members of the jury panel were from the same county and "had some type of relationship or related to the state witnesses," and he should have objected.  (#1 at p. 27)  In his response to the Court's order, Mr. James elaborates on his claim by stating that his counsel "should have moved for a continuance so that he could have filed for a change of venue."  (#16 at p. 23)

Mr. James has not offered any evidence to support his claim that members of the jury panel were from the same section of the county or that the jurors were biased.  Mr. James focuses on his counsel's failure to challenge jurors Norman and Harrell for cause.[1] (#16 at p. 20)  During voir dire, juror Ms. Norman stated that she knew two of the witnesses and that she used to drag race with the deceased, but she also said that she could put aside her knowledge and relationships to the witnesses, make a decision based solely on the evidence presented, and provide each side with a fair and impartial trial. (Respondent's Exhibit A3 at pp. 406-07)

---

[1]Mr. James's counsel asked the court to strike two members of the jury panel, Burns and Gipson, for cause.  (Respondent's Exhibit A3 at pp. 446, 477-480, 497-98, 521-26, 587)  The court denied the request, but both jurors were stricken.

Juror Harrell stated during voir dire that he knew someone who was a state police officer, but that person was not testifying at trial.  Mr. Harrell stated that in spite of his acquaintance with a law enforcement officer, he would not favor any law enforcement officer who was testifying at the trial.  (*Id*. at pp. 436-37)

There is no evidence to establish that either of these jurors was biased against Mr. James, and his counsel was not incompetent for failing to challenge these jurors for cause. Further, Mr. James has not established that either the jury panel or any individual juror affected the outcome of the trial so as to establish prejudice.  Mr. James's claim that his counsel was ineffective for failing to object to the jury panel or to challenge jurors Norman or Harrell does not have merit.

3.    *Claim Four - Admission of the Surveillance Video*

For his fourth claim, Mr. James challenges the "validity of the surveillance camera." (#1 at pp. 27-36)  Prior to the trial, the parties stipulated to the admission of the surveillance video.  (Respondent's Exhibit A3 at p. 620)  Here, Mr. James asserts that the surveillance video was altered between the time that it was shown to the jury during presentation of the evidence and the time it was shown to the jury during deliberation. (#1 at pp. 28-29, #16 at p. 23)

Before the video was shown to the jury during deliberation process, the prosecution advised the trial court that "whenever it was played during the course of the trial, the time showed up on the big screen.  For whatever reason, it is not going to do it

when they play it now, but it will be on the monitor if they are concerned about times."
(Respondent's Exhibit A4 at p. 902)

Mr. James asserts that the prosecution caused the time not to appear on the monitor when it was played for the jury during deliberations and claims that chain of custody was never established. But, he has not offered any evidence to support either of these claims. (#1 at p. 28, #16 ay p. 23) There is no evidence that the surveillance video was altered to prevent the time from appearing on the video when the jury viewed the video during deliberations. In fact, the time was available for the jury to watch on the monitor. Further, Mr. James did not offer any evidence to establish that there was a problem with the chain of custody of the video. Accordingly, his counsel's performance did not fall below the standard of a competent attorney when he opted not to challenge the admissibility of the surveillance video.

Additionally, Mr. James has not established that the admission of surveillance video actually prejudiced him. Here, in addition to the video, the prosecution offered eye witness testimony recounting the events. (*Id*. at pp. 613-620, 632-36, 674-75, 743, 751,755-60) Mr. James's claim that his counsel was ineffective for failing to object to the surveillance video lacks merit.

4. *Claim Five - Jury Selection*

Mr. James, for his fifth claim, again complains that his counsel was ineffective for failing to "diligently attack" the selection of Jurors Norman and Harrell, who he claims

17

were "prejudicial."[2]  (#1 at pp. 36-41)   For the reasons set forth in the discussion of claim

three above, this claim lacks merit.

     5.     *Claim Six - Defense of Extreme Emotional Distress*

     For his sixth claim, Mr. James argues that his counsel was ineffective because he

abandoned an "extreme emotional distress or inflamed heat of passion defense" and

unreasonably failed to "have petitioner evaluated for emotional defects." (#1 at pp. 42-

45)  As support for his claim, Mr. James points to the testimony of Paul Deyoub, Ph.D.

Dr. Deyoub testified that he was asked to give an opinion about the presence or absence

of mental disease or defect in Mr. James, whether Mr. James was competent to proceed to

trial or to assist his lawyer in his defense, and whether he had the capacity to appreciate

the criminality of his conduct and conform his conduct to the requirements of the law.

(Respondent's Exhibit A4 at p. 718)  Dr. Deyoub testified that Mr. James was "fit to

proceed and assist his attorney . . . . There was no mental disease or mental defect.  He

had a minor diagnosis of adjustment disorder with depressed mood, similar to anyone that

would have that if they were in distressing circumstances.  So there was no – that is not a

mental disease."  (*Id.*)

---

     [2]In elaborating on his claim, Mr. James complains about his attorney's questioning of other members of the jury panel.  His disagreement with his counsel's questioning of other members of the panel is, however, irrelevant because these panel members were excused and, thus, could not have affected the outcome of the trial.  (Respondent's Exhibit A3 at p. 446, 526, Exhibit A4 at pp. 905-06)

Generally, Mr. James complains that his lawyer failed to present evidence that "the petitioner acted under extreme emotional distress, knowing and hearing the words that his wife [Heather James] was having an affair with another man."   (#1 at p. 43)   Mr. James has not come forward with any evidence, however, that he thinks should have been presented or testimony that his counsel could have presented that was not presented at trial.   In fact, at trial Mr. James's counsel questioned witnesses about the affair and emphasized the emotional distress that his wife's affair caused Mr. James.   (Respondent's Exhibit A3 at pp. 649-50, Respondent's Exhibit A4 at pp. 668-69, 679-680, 683-84, 723-25, 788-90, 797-821, 859-78)

Mr. James seems to argue that his trial counsel should have further investigated and perhaps hired an expert.   (*Id*. at pp. 44-45)   As explained, however, "[a] claim of ineffective assistance based on the failure to consult and call an expert requires 'evidence of what a scientific expert would have stated' at trial in order to establish *Strickland* prejudice."   *Rodela–Aguilar v. United States,* 596 F.3d 457, 462 (8th Cir. 2010) (quoting *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009), and also citing *Delgado v. United States,* 162 F.3d 981, 983 (8th Cir. 1998)).

Even if Mr. James's counsel was deficient in failing to present more favorable expert testimony, Mr. James may not have been able to prove prejudice.   See *Cole v. Roper,* 623 F.3d 1183, 1190 (8th Cir. 2010).   Here, Dr. Deyoub testified that at the time of the murder Mr. James "possessed a culpable state, which means he had the ability to

possess knowing and purposeful behavior.  He had the capacity to appreciate the criminality of his conduct.  In other words, know right from wrong.  And, he did not lack the capacity to conform his conduct with the requirements of the law." (Respondent's Exhibit A4 at p. 719)

Mr. James has not come forward with contrary expert testimony to support his claim of emotional distress and has not established a reasonable probability that the jurors' decision would have been different if they had they been presented with the testimony of another expert.  Accordingly, Mr. James's sixth ineffective assistance of counsel claim lacks merit.

In *Martinez*, the Supreme Court made it clear that, in order for the exception to apply to overcome a procedural default, the prisoner must demonstrate that his underlying ineffective-assistance-of-trial-counsel claims are substantial, meaning that the claims have some merit.  Mr. James has not come forward with evidence to demonstrate that any of his procedurally defaulted ineffective assistance of counsel claims have merit.  Accordingly, the *Martinez* exception cannot excuse Mr. James's procedural default.

E.    Prejudice to Overcome Procedural Default

Even if Mr. James had established merit to his ineffective-assistance-of-counsel claims, he has not demonstrated prejudice to overcome the procedural bar.  To demonstrate prejudice sufficient to overcome a procedural bar, Mr. James must show not merely that his counsel's errors created a possibility of prejudice, but also that, in fact,

those errors worked to his actual and substantial disadvantage, infecting his entire trial with constitutional error.  *Armstrong v. Kemna*, 590 F.3d 592, 606 (8th Cir. 2010) (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584 (1982)).  The burden of proving procedural-bar prejudice is either the same or higher as the standard for prejudice articulated in *Strickland*.  *Id*. (citing *Charron v. Gammon*, 69 F.3d 851, 858 (8th Cir. 1995)); but see *Clemons v. Luebbers*, 381 F.3d 744, 752–53 n. 5 (8th Cir. 2004) (noting the standard for prejudice under *Strickland* may be similar to the standard for prejudice under the procedural default analysis).

Here, Mr. James has not provided a basis for the Court to find prejudice under *Strickland*.  There was substantial evidence of Mr. James's guilt presented at trial.  The prosecution presented video from the security camera in the Wal-Mart parking lot that showed Mr. James arrived at the parking lot, waited in the car for some minutes, then drove over to where his wife and the victim, Mr. Rice, were standing.  (Respondent's Exhibit A3 at p. 620-27, Exhibit A5 at p. 920)  Heather James offered an eyewitness account of the events and testified that Mr. James got out of his truck and began firing his gun at Mr. Rice.  (Respondent's Exhibit A3 at pp. 617-620)  Ms. James and another eyewitness described how Mr. James continued firing while he chased Mr. Rice, who was attempting to flea, and then fired the gun a final time standing over Mr. Rice as he fell to the ground.  (Respondent's Exhibit A3 at pp. 618-19, 633)

Mr. James's son testified that his father told him that he had shot Mr. Rice and, after throwing the gun in a cardboard box, sat on the porch with him waiting for the police to arrive.  (*Id*. at pp. 648-49)  Investigating officers testified that they found the murder weapon in Mr. James's house and a note from Mr. James to Heather James expressing sorrow that "it ended this way" and thanking her for the time with her son. (Respondent's Exhibit A4 at pp. 674-75, 686, 745-49)

In addition, four law enforcement officers testified that Mr. James made statements to them admitting that he had shot Mr. Rice.  (*Id*. at p. 679, 743, 751, 755-60)  And the medical examiner testified that Mr. Rice had some other minor wounds but had died from two gunshot wounds to his face.  (*Id*. at pp. 778-79)

In the light of the overwhelming evidence presented by the prosecution at trial, Mr. James has not come forward with evidence to establish that his counsel's errors worked to his actual and substantial disadvantage, infecting his entire trial with constitutional error. *Armstrong*, 590 F.3d at 606.

F.      Venue

The parties agree that Mr. James exhausted his claim that counsel was ineffective for failing to request a change of venue with the state courts.  Mr. Hobbs contends, however, that the state court's denial of the claim was neither contrary to clearly established Federal law, nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence presented.   In reviewing the claim, the

22

State court's factual determinations are presumed correct, and Mr. James has the burden of rebutting this presumption by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

In his Rule 37 petition to the trial court, Mr. James argued that his counsel should have asked for a change of venue.  As support for his argument, Mr. James stated that the victim had family members on the police force and an uncle who was a bailiff.  Further, he stated that, due to the press, the community was "inflamed with anger."  (#5-5 at pp. 10, 29)  The trial court denied relief on Mr. James's claim, finding that the argument was "not supported by any facts, affidavits, newspaper reports, or statements of Logan County, Arkansas residents."  (*Id*. at p. 39)

On appeal to the Arkansas Supreme Court, Mr. James pointed to an exchange that took place between the prosecutor and six potential jurors during voir dire to support his change of venue claim.  (#5-6 at pp. 26-28)  The prosecutor asked if any of the jurors had read or heard news accounts regarding the case, and all six potential jurors raised their hands.  (Respondent's Exhibit A3 at pp. 414-15)  One juror, who was not ultimately selected to serve on the jury, later stated in response to a question that she thought it would be "hard to find people who haven't already formed an opinion."  (Respondent's Exhibit A3 at p. 435, A4 at p. 905)

The Arkansas Supreme Court applied the standard set forth in *Strickland*.  *James v. State*, 2013 Ark. 290, *2-3 (2013).  The Court noted that Mr. James had not explained "in what manner the victim's relatives adversely affected his right to a fair trial in the

county."  The Court stated that, to prevail on his claim, Mr. James would have to "state a ground on which the motion could have been founded."  *Id*. at *5 (citing *Hale v. State*, 2011 Ark. 476).  The Court held that Mr. James had not presented facts to affirmatively support his claim of prejudice and affirmed the trial court's denial of relief.  *Id*.  Here, to support his claim that his trial counsel was ineffective for failing to request a change of venue, Mr. James again relies on excerpts from voir dire, where members of the jury panel were asked about their knowledge of the case prior to trial.  (#1 at pp. 20-25)

The Arkansas Supreme Court's analysis was not contrary to clearly established federal law.  The Court applied the appropriate standard set forth in *Strickland* to determine whether the actions of Mr. James's counsel fell below the standard required by the Constitution.  Further, the Arkansas Supreme Court's finding that Mr. James had not presented facts to affirmatively support his claim of prejudice was not an unreasonable determination of the facts in light of the evidence presented.

Accordingly, the state court decision was neither incorrect nor unreasonable, and Mr. James is not entitled to habeas relief.

## V.    Certificate of Appealability

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability.  Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court.  The Court can issue a certificate of appealability only if Mr. James has made a substantial showing that he was denied a constitutional right.  28

U.S.C. § 2253(c)(1)-(2).  In this case, Mr. James has not provided a basis for issuing a certificate of appealability.

## VI.    <u>Conclusion</u>

The Court recommends that Robert James's petition for writ of habeas corpus be dismissed, with prejudice.  The Court further recommends that no certificate of appealability be issued.

DATED this 1st day of April, 2014.

_____

UNITED STATES MAGISTRATE JUDGE